# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:20-CR-81-001** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANTHONY RANKINS** | : | |

## MEMORANDUM AND ORDER

### I.  Introduction

Anthony Rankins is a pretrial detainee who is currently detained in the Dauphin County Prison pending his trial for federal drug trafficking charges. Rankins has a prior criminal history marked by drug possession and distribution, assaultive violence and resisting arrest. He is charged with conspiracy to distribute cocaine base and three counts of drug distribution. Rankins also has acknowledged daily illicit drug use.

This case comes before us for consideration of a motion for release of the defendant. In this motion Rankins advances two arguments. First, he asks us to consider releasing him and denying the government's request to detain him under 18 U.S.C. § 3142(e). In addition Rankins seeks release pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to

be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, according to Rankins a "compelling reason" which justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. In addition, the defendant argues that he is not a danger to the community or a risk of flight, and that there are conditions of release that will assure his appearance should he be released pending trial. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II.     Factual Background and Procedural History

On March 4, 2020, the defendant and others were charged with conspiracy to possess with intent to distribute controlled substances and distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846. Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings were then conducted in this case on March 11, 2020.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: The defendant, a lifelong resident of York, Pennsylvania, was thirty-eight years old at the time of his arrest. He reported that he had no physical or mental health concerns, but that he began using illicit substances at the age of eighteen. The defendant's criminal history spanned two decades and included charges of possession of controlled substances and drug paraphernalia, aggravated assault and reckless endangerment, resisting arrest and disorderly conduct. The pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: the nature of the charged offenses and prior criminal convictions; substance abuse; a

history of violent behavior, including domestic violence; and a pattern of similar criminal activity.

A detention hearing was scheduled for March 17, 2020. (Doc. 50). However, due to the developments surrounding the COVID-19 crisis, this detention hearing was cancelled. Thus, we ordered the defendant detained, without prejudice, pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: the lengthy incarceration period the defendant faces on the charged offenses; his prior criminal history; and his history of substance abuse. (Doc. 65).

The instant motion for temporary release presented a twofold argument: First, the defendant seeks reconsideration of our initial preliminary order of detention, arguing that he is not a danger to the community or a flight risk, and that there are conditions of release that will assure his appearance if released to a third-party custodian pending trial. In addition, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to

4

engage in the type of social isolation that is recommended to curb the spread of this disease.

The Government, in turn, opposes this motion, arguing that the defendant has not met his burden to justify his release pending trial. We agree, and for the reasons that follow, we will deny the defendant's motion.

### III. Discussion

#### A. Release and Detention Under 18 U.S.C. § 3142

Rankin's motion is cast both as a motion seeking temporary release under 18 U.S.C. § 3142 (i), and as a request for reconsideration of our initial detention order which was entered pursuant to 18 U.S.C. § 3142(e). Accordingly, this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the

>factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142(e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a

finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United

States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency

motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary." § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

### B. The Defendant's Motion for Temporary Release Will Be Denied.

At the outset, as we recognized in our initial preliminary detention order, the drug trafficking offenses the defendant is charged with in the instant case give rise to a rebuttable presumption of detention. Moreover, this grand jury finding of probable cause to believe that Rankins indulged in drug trafficking "is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986). Therefore, the burden rests with Rankins to overcome this presumption in favor of detention.

On this score, given the evidence presented by the defendant, we find that he has not overcome this presumption of detention. While we commend the defendant's proposed third-party custodian for her willingness to take responsibility of the defendant should he be released to her custody, we find that the defendant's past conduct does not inspire faith on his part that he would abide by any conditions of release.[1] Specifically, the defendant's criminal history spans two decades and

---

[1] We also acknowledge that the third-party custodian's reported criminal record,

includes offenses of drug trafficking similar to the charged offenses in the instant case. His past criminal conduct also includes violent conduct, and entails convictions for aggravated assault and reckless endangerment. In addition to his past criminal conduct, the defendant also has a history of substance abuse and noncompliance with parole or supervision. Accordingly, we find that the defendant has not overcome the presumption of detention in the instant case.

Moreover, regarding the temporary release provision in § 3142(i), we first note that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

---

which includes several reported bench warrants, also makes her a problematic choice to oversee Rankins' compliance with bail conditions.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case, the defendant does not allege any specific concerns regarding the virus, such as physical health-related concerns, beyond a genuine, but generalized, concern regarding the risks created by COVID-19, to warrant his pretrial release. He contends that merely living in a custodial setting increases his risk of exposure to the virus. Thus, the COVID-19 concerns in the instant case are speculative at best.

Moreover, the defendant does not provide us with any evidence to suggest that his proposed release plan to a third-party custodian would mitigate his risk to exposure of COVID-19 or the risk to others. Rankins' motion proposes his release to his paramour. However, the motion does not address the how residing with this individual would mitigate his exposure or theirs. Rather, the motion asserts generally that the prisons do not allow for proper compliance with procedures that tend to limit the spread or exposure of the virus. On this score, the government asserts that Dauphin County Prison has taken additional steps during this time to insulate and

protect inmates from COVID-19, steps which it contends have been successful thus far. Indeed, as of the date of this memorandum, there have been no confirmed cases of COVID-19 reported from Dauphin County Prison.

However, we must weigh these health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community. On this score, we found that the incarceration period the defendant faces on the charged offenses is lengthy; his prior criminal history is extensive; and he has a history of substance abuse. (Doc. 65). The defendant's motion does not address these very serious and grave considerations that ultimately led to the defendant's detention in the first instance, nor does it consider the risk to the community should the motion for release be granted.

### IV.     Conclusion

Weighing and balancing these countervailing considerations we conclude that the safety concerns that led us to order the detention of the defendant pending trial have not been overcome by the defendant's generalized concerns regarding the spread of or exposure to the COVID-19 virus while incarcerated. Based upon these findings, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in

. . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

    An appropriate order follows.

                                                                /s/ Martin C. Carlson
                                                               Martin C. Carlson
                                                                United States Magistrate Judge

DATED: April 22, 2020

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:20-CR-81-001** |
| | : | |
| v. | : | **(Chief Judge Conner)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANTHONY RANKINS** | : | |

## ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 22d day of April 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge